Banoka S.à.r.l. v. Elliott Mgmt. Corp.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

―――――

August Term, 2024

(Argued: March 27, 2025    Decided: July 31, 2025)

Docket No. 24-1352

―――――

BANOKA S.à.r.l., ATYS S.A., RENATO PICCIOTTO,
JACQUES CHAMPY, JEAN BISSONNET,

*Petitioners-Appellants,*

— v. —

ELLIOTT MANAGEMENT CORP., ELLIOTT INVESTMENT MANAGEMENT L.P.,
ELLIOTT ASSOCIATES L.P., ELLIOTT INTERNATIONAL L.P.,

*Respondents-Appellees,*

ALVAREZ & MARSAL, INC., ALVAREZ & MARSAL TRANSACTION
ADVISORY GROUP, LLC, ALVAREZ & MARSAL HOLDINGS, LLC,

*Respondents.*[*]

―――――

[*]The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

1

———————

B e f o r e:

LYNCH, MENASHI, and LEE, *Circuit Judges.*

———————

Appellants challenge the denial of their petition for third-party discovery under 28 U.S.C. § 1782, arguing that the district court improperly analyzed the third and fourth discretionary *Intel* factors when it rejected their petition. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). Specifically, they argue that (1) the district court erroneously weighed a forum-selection clause against them under the third factor and (2) their discovery requests were not unduly burdensome or disproportionate to the needs of the case under the fourth factor.

We identify no abuse of discretion in the district court's ruling. Although the choice to seek discovery in a forum other than that selected in a forum-selection clause might not necessarily suggest an attempt to evade the kind of foreign proof-gathering restrictions addressed by the third *Intel* factor, a clear contractual preference for a different forum is nevertheless a factor that the district court may consider when assessing whether to grant discovery under § 1782. And we see no error in the district court's determination that Appellants' numerous, broad, and largely extraterritorial discovery requests were unduly burdensome under the fourth *Intel* factor. We therefore **AFFIRM** the district court's order denying Appellants' § 1782 petition.

———————

AUSTIN D. KIM, Meister Seelig & Fein PLLC, New York, NY
(Alexander D. Pencu, Christopher J. Major, Meister Seelig & Fein PLLC, New York, NY, *on the brief*) *for Petitioners-Appellants.*

JAMES E. TYSSE, Akin Gump Strauss Hauer & Feld LLP, Washington,

2

DC (Lide E. Paterno, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, Anne M. Evans, Sean Nolan, Akin Gump Strauss Hauer & Feld LLP, New York, NY, *on the brief*) *for Respondents-Appellees.*

GERARD E. LYNCH, *Circuit Judge*:

Petitioners-appellants Banoka S.à.r.l., ATYS S.A., Renato Picciotto, Jacques Champy, and Jean Bissonnet (collectively "Banoka") appeal from an April 16, 2024 order of the United States District Court for the Southern District of New York (Gregory H. Woods, *J.*) denying their petition to compel discovery from respondents-appellees Elliott Management Corp. ("EMC") and Elliot Investment Management, L.P., ("EIM") as well as Elliott Associates, L.P., and Elliott International, L.P. (together, "the Elliott Funds," and collectively with EMC and EIM, "Appellees").[1] Section 1782 permits a district court "upon the application of any interested person," to order a person within its jurisdiction to provide evidence "for use in a proceeding in a foreign or international tribunal." 28 U.S.C.

---

[1] In the same petition, Banoka also sought to compel discovery from respondents Alvarez & Marsal, Inc., Alvarez & Marsal Transaction Advisory Group, LLC, and Alvarez & Marsal Holdings, LLC. The district court denied that discovery as well; on appeal, however, Banoka does not challenge the denial of its petition with respect to those entities.

§ 1782(a).[2] In its petition and on appeal, Banoka explained that it sought

discovery for use in a contemplated suit in the English courts that would bring

fraud claims against a non-party real estate development group whose business

deal with Banoka had fallen through in early 2020. The Elliott Funds were set to

provide funding for the deal, while EMC and EIM served as their advisors; thus,

Banoka believes that Appellees have documents and information relevant to the

potential litigation.

Banoka argues on appeal that the district court improperly applied two of

the four discretionary *Intel* factors when deciding their § 1782 petition. *See Intel*

*Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). Specifically, it

argues that (1) the district court erroneously weighed a forum-selection clause

against them under the third factor and (2) its discovery requests were not

unduly burdensome or disproportionate to the needs of the case under the fourth

factor.

---

[2] That statute reads in relevant part:

> The district court of the district in which a person resides or is
> found may order him to give his testimony or statement or to
> produce a document or other thing for use in a proceeding in a
> foreign or international tribunal.

28 U.S.C. § 1782(a).

4

Appellees respond that (1) we lack jurisdiction over this appeal, because the district court permitted Banoka to resubmit its proposed subpoenas regarding the Elliott Funds, Banoka has done so, and the district court has not yet ruled on those revised subpoenas; (2) the district court did not abuse its discretion when applying the third and fourth *Intel* factors; and (3) alternatively, Banoka's contemplated English proceeding is not "reasonably contemplated," as necessary to meet § 1782's "for use" statutory requirement.

After oral argument, the parties confirmed in a joint letter to this Court that Banoka has committed to dismiss its petition as to the Elliott Funds and accordingly will not pursue its revised subpoenas before the district court. Because that action resolves the only issue that remained open before the district court, it renders the order from which Banoka appeals final for our purposes. *See Scottsdale Ins. Co. v. McGrath*, 88 F.4th 369, 377 n.7 (2d Cir. 2023). Accordingly, we have jurisdiction to decide this appeal. *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011).

Upon review, we identify no abuse of discretion in Judge Woods's handling of Banoka's petition. Even if we were to assume that Banoka's choice to seek discovery in a forum other than the one identified in its forum-selection

5

clause does not necessarily demonstrate "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country" within the meaning of the third *Intel* factor, *Intel Corp.*, 542 U.S. at 264–65, the forum-selection clause at least suggests a contractual preference for resolving discovery disputes in the selected forum, under that forum's rules. It is within the district court's discretion to consider such a contractual preference, along with other factors, when evaluating a § 1782 petition. Thus, the district court did not abuse its discretion by considering the forum-selection clause as one factor among many in this case. Nor do we see error in the district court's conclusion that Banoka's document requests were "unduly broad," Special App'x 58, and sought mainly documents created and controlled by Appellees' overseas affiliate. The district court did not abuse its discretion in weighing those facts against Banoka's petition.

We therefore AFFIRM the district court's order denying Banoka's § 1782 petition.

## BACKGROUND

### I.     Factual Background

The Banoka appellants are European corporations and individuals who were substantial owners of Clichy Victor Hugo ("CVH"), a French company that managed and operated a Holiday Inn-branded hotel in Paris. Between September 2019 and February 2020, they tried to sell their shares in CVH – and, accordingly, their ownership interest in the hotel – and entered negotiations with a real estate development group called Westmont International Development Inc. ("Westmont").

At the time, Westmont was engaged in a joint venture called WNE Investor S.à.r.l. ("WNE Investor") with Elliott Associates and Elliott International, which are "private investment funds, onshore and offshore respectively." App'x 831. The Elliott Funds were the majority owners of the joint venture. "Through WNE Investor, the Elliott Funds provide[d] capital which [wa]s used by Westmont to acquire and operate hotels" around the world. *Id.*

The Elliott Funds were advised in their investments by their affiliated investment advisors, EIM and EMC, based in the United States, and Elliott U.K., based in London. According to the Elliott Funds, the investment decisions

relevant to the hotel transaction were entrusted to Elliott U.K. Due diligence work for Westmont was conducted by Alvarez & Marsal, Inc.; Alvarez & Marsal Transaction Advisory Group, LLC; and Alvarez & Marsal Holdings, LLC (together, the "A&M Entities").

Negotiations over the Paris hotel took place exclusively between representatives of Westmont, who were based in England, and the French-based Banoka, in its capacity as a substantial owner of CVH. Beginning in late June 2019, Banoka sought offers for the Paris hotel. In the fall of 2019, Westmont sought to enter an exclusivity agreement with Banoka, under which Banoka would terminate discussions with other bidders while Westmont and Banoka attempted to reach a deal. Banoka agreed, on the condition that Westmont agree to offer at least € 55 million cash at closing. Westmont accepted that condition, and the parties entered into an exclusivity period that was set to expire on December 31, 2019. During that time, while Westmont conducted due diligence and the parties attempted to negotiate and finalize a share purchase agreement, Banoka ceased discussions with other bidders.

As part of the exclusivity agreement, Banoka also agreed, in a broadly worded forum-selection clause, that "the courts of England and Wales [would]

8

have exclusive jurisdiction in relation to any dispute *arising out of or in relation to* [the exclusivity agreement]."App'x 49 (emphasis added).

In December 2019, Westmont began to raise "red flags" from its due diligence, which Banoka now claims were pretextual.[3] Appellants' Br. 19-20 (emphasis omitted), quoting App'x 35. Westmont sought to reduce its offer by €2 million in light of those concerns. Nevertheless, it assured Banoka that it intended to continue pursuing the deal. Banoka agreed to reduce the price by €1 million and continued negotiations.

According to Banoka, delays due to Westmont's due diligence[4] continued, but, relying on Westmont's assurances that the deal would go forward, Banoka agreed to extend the exclusivity period twice more through February 12, 2020. The exclusivity period lapsed, though Westmont continued to represent that it intended to complete the transaction by the end of the month. By late February,

---

[3] The Elliott Funds counter that their due diligence concerns, which included such matters as "an improper omission from CVH's expenses that resulted in CVH's profitability being overstated by 11%," were legitimate. Appellees' Br. 10, citing App'x 837-38.

[4] The Elliott Funds argue that at least one delay, an extension of the exclusivity period from December 31, 2019, to January 31, 2020, came from Banoka's side, because "'CVH required th[e] additional time to obtain approval of the contemplated transaction' in accordance with French law." Appellees' Br. 10, quoting App'x 838.

however, the COVID-19 pandemic was surging, and Westmont sought to renegotiate the deal again. Banoka rejected that effort, and the deal fell through.

## II. Procedural History

Believing that Westmont had delayed the deal in bad faith, Banoka began to explore potential litigation against it in England.[5]

To support that potential litigation, on December 4, 2020, Banoka commenced a § 1782 proceeding against Westmont, seeking discovery in the Southern District of Texas, where Westmont is headquartered. *See In re Petition of Banoka S.à.r.l, ATYS SA. et al.*, No. 20 Misc. 3378 (S.D. Tex. Dec. 4, 2020). The district court there concluded that the relevant *Intel* factors weighed against granting Banoka's § 1782 petition. *Banoka v. Westmont Int'l Dev. Inc.*, No. 20 Misc. 3378, 2022 WL 480118, at *4-5 (S.D. Tex. Feb. 10, 2022).[6] The district court denied Banoka's § 1782 petition because (1) Westmont was a party to the contemplated litigation, (2) it had agreed to subject itself to suit in English court by virtue of the

___

[5] To date, no actual litigation in England has commenced.

[6] We discuss the *Intel* factors below and quote them in full in the text at p. 20. In brief, the four factors consider (1) whether the entity "from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal" and its "receptivity . . . to U.S. federal-court judicial assistance"; (3) whether the discovery request is "an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264-65.

parties' "broadly worded" forum-selection clause, (3) English courts had procedures for pre-suit discovery of the kind Banoka sought, (4) the parties had bargained for the pre-suit discovery policies of the English courts by virtue of the forum-selection clause, and (5) the documents Banoka sought (and their custodians) were located in London, not Texas. *Id.* at *3-5. The Fifth Circuit affirmed that determination in a four-sentence order. *Bissonnet v. Westmont Int'l Dev., Inc.*, No. 21-20434, 2022 WL 636680, at *1 (5th Cir. Mar. 4, 2022).

Having failed to obtain discovery against Westmont in Texas, Banoka filed a second § 1782 action, this time in the Southern District of New York, against EIC, EIM, the Elliott Funds, and the A&M Entities. The case was assigned to District Judge Woods, who referred it to Magistrate Judge Katherine H. Parker for resolution.

Following briefing and a hearing, Magistrate Judge Parker denied the petition. *Banoka S.à.r.l. v. Alvarez & Marsal, Inc.*, No. 22 Misc. 00182, 2023 WL 1433681, at *6-7 (S.D.N.Y. Feb. 1, 2023). She held that Banoka had failed to show that the requested discovery would be "for use" in a foreign proceeding because the alleged future proceeding was "merely speculative." *Id.* at *6, quoting *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir. 2020). Banoka had

11

conceded that it did not have sufficient information to bring suit against Westmont without the discovery sought in its § 1782 petition, and it had not provided a sufficient factual basis for its theory of liability. *Id.* Because the request was "more in the nature of a fishing expedition" and Banoka had already been threatening litigation for two years with nothing filed, Magistrate Judge Parker held that a suit was not in "reasonable contemplation" for purposes of the second statutory element of a § 1782 proceeding. *Id.* at *6-7.

Banoka objected to the magistrate judge's decision, arguing that it had provided sufficient information to demonstrate that its suit was in "reasonable contemplation" even though it currently lacked sufficient information to bring it. In a March 22, 2024, opinion and order, Judge Woods agreed with Banoka, holding that "because [it] ha[d] taken concrete steps such as retaining English counsel, developing a detailed legal theory, and sending pre-suit demand letters, [its] proposed proceeding against Westmont satisfies Section 1782's requirement that the requested discovery be for use in a foreign proceeding." *Banoka, S.à.r.l. v. Alvarez & Marsal Inc.*, No. 22 Misc. 182, 2024 WL 1242994, at *1 (S.D.N.Y. Mar. 22, 2024). By providing those materials, Banoka had demonstrated its "'practical ability to inject the requested information into a foreign proceeding'" – all that

12

Judge Woods understood to be required under Second Circuit precedent. *Id.* at

*7-8, quoting *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir.

2022). Accordingly, Judge Woods rejected the portion of Magistrate Judge

Parker's opinion that held the requested discovery was not "for use" in a foreign

proceeding. *Id.*

Briefing and argument regarding the discretionary *Intel* factors followed.

On April 11, 2024, in an extensive oral opinion, Judge Woods granted Banoka's

§ 1782 petition with respect to the Elliott Funds and denied discovery with

respect to all other respondents, including EIM and EMC. He found that the first

two *Intel* factors weighed in favor of granting discovery because Banoka

stipulated that its "proposed proceeding [in England] is against Westmont only"

(not any of the Appellees), Special App'x 49, and because "English courts have

endorsed the use of Section 1782 to obtain nonparty discovery," *id.* at 52. But he

found that the remaining factors – and the balance of the factors – ultimately

weighed against discovery except as to the Elliott Funds.

Specifically, Judge Woods concluded that the forum-selection clause in

Banoka's agreement with Westmont, together with the Elliott entities' allegation

"that an English court would be unlikely to allow [Banoka] to seek pre-suit

13

discovery," weighed against granting the petition with respect to all the respondents under the third factor. *Id.* at 56-57. Judge Woods also determined that the fourth factor weighed against granting discovery with respect to the EIM, EMC, and the A&M Entities, because the discovery sought was overbroad and unduly burdensome in light of (1) EIM, EMC, and the A&M Entities' lack of direct involvement in the transaction at issue and (2) the location of the relevant witnesses and records, which were largely or entirely located abroad.

As to the Elliott Funds, however, which would have provided the funding for the CVH hotel transaction, Judge Woods concluded that the factors weighed differently, because the Elliott Funds had been substantial majority investors in the joint venture with Westmont that aimed to purchase the hotel, and they had been advised by the U.K.-based Elliott entity that "communicated with Westmount regularly through the negotiations." *Id.* at 61 (internal quotation marks omitted and alterations adopted). As a result, Judge Woods granted limited discovery with respect to the Funds and stated that he would "consider revised subpoena requests . . . consistent with the Court's ruling," *id.* at 68 – i.e., much curtailed, including only "documentary materials with respect to which [the Funds] are parties, or signatories, or direct participants," *id.* at 62-64.

Judge Woods explicitly stated that any revised subpoena requests should not include documents whose primary custodians were abroad because "allowing [Banoka] to effectively seek discovery materials located in England from Elliott U.K. as a result of any shared IT platforms or control arrangement with Elliott Associates, L.P. and Elliott International, L.P. would heighten the Court's concerns about forum shopping and attempts to evade foreign proof-gathering restrictions." *Id.* at 64. He directed Banoka and the Elliott Funds to "meet and confer regarding the scope of any renewed application to the Court" and to "submit a status letter to the Court no later than May 1, 2024." *Id.* at 68.

On May 1, 2024, the parties submitted a joint status letter explaining that they had not been able to reach an agreement regarding the scope of Banoka's revised subpoenas. Banoka explained that "[t]he key dispute between the parties is whether the Elliott Funds are required to produce documents they own but were created by their investment advisor affiliates." App'x 1120. It argued that the district court's decision reached those documents because "the Elliott Funds' disclosure obligations include documents and information created by the Elliott Funds' investment advisors who acted as the Elliott Funds' agents." *Id.*, citing *In re Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992). In pursuit of those

15

documents, Banoka attached proposed revised subpoenas to the letter for the district court's review.

The Elliott Funds responded that they had no documentary materials "with respect to which [they were] parties, or signatories, or direct participants" or over which they were "primary custodian[s]" because they did not have "directors, officers, or employees and therefore d[id] not have any individuals who would have generated e-mail or other documents on behalf of the Elliott Funds regarding the contemplated transaction." *Id.* at 1122-23 (internal quotation marks omitted). Had the transaction moved forward, the Funds explained, they would have generated documents by funding the venture; however, they were not decision-makers regarding whether to complete the transaction, which never closed. As a result, the Funds maintained that they had no responsive documents, and they accused Banoka of trying to end-run the district court's denial of its petition with respect to the other entities by seeking documents from those other entities through them. They urged the court to deny the revised subpoenas accordingly.

On May 13, 2024, less than two weeks after that joint status letter was filed – and before the district court had acted on the revised subpoenas put forward in

that letter – Banoka filed a notice of appeal challenging the district court's April 16 Order.[7]

## DISCUSSION

### I. We have jurisdiction over this appeal.

Before we reach the merits, we must first address whether we have jurisdiction to hear this appeal. Appellees argued in their brief that we lack jurisdiction because Judge Woods's order "did not conclude all proceedings relating to [the § 1782] application." Appellees' Br. 22, quoting *Mangouras v. Squire Patton Boggs*, 740 F. App'x 757, 758 (2d Cir. 2018) (summary order). Specifically, they noted that Judge Woods's order allowed Banoka to "resubmit [its] proposed subpoenas" with respect to the Elliott Funds, at which point Judge Woods indicated he would "determine whether the requests as framed remain overbroad, unduly burdensome and disproportionate to the needs of the case." *Id.* at 23, quoting Special App'x 62, 64. However, before Judge Woods could make that determination, Banoka filed the notice of appeal in this case.

We have held that we lack jurisdiction over a § 1782 order that, like the order at issue here, leaves open issues before the district court. *See Mangouras*, 740

---

[7] As noted above, *supra* note 1, Banoka appealed the denial of its petition only with respect to EIM, EMC, and the Elliott Funds.  It did not appeal with respect to the A&M Entities.

17

F. App'x at 758; *see also Chevron Corp.*, 629 F.3d at 306 (holding that an order

granting or denying discovery under § 1782 is appealable where that order

constitutes "the final adjudication of the § 1782 application"). However,

> [w]hen an appeal is pending but the presence of
> unresolved claims has put our jurisdiction into question,
> we have . . . accepted jurisdiction when a plaintiff has
> clarified in a submission to our Court or at oral
> argument that it is dismissing those unresolved claims
> with prejudice or otherwise has definitively abandoned
> those claims.

*Scottsdale Ins. Co.*, 88 F.4th at 377 n.7 (emphasis omitted), citing *Alix v. McKinsey &*

*Co.*, 23 F.4th 196, 203 (2d Cir. 2022).

Here, Banoka has made the representations necessary to confirm our

jurisdiction. At oral argument, it explained that it had abandoned any attempt to

pursue revised subpoenas before it filed this appeal. Following oral argument,

the parties filed a joint letter confirming that Banoka had agreed to dismiss with

prejudice its petition as against the Elliott Funds. Such a dismissal with prejudice

precludes Banoka from reviving the revised subpoenas contemplated in Judge

Woods's order. Thus, it leaves nothing more for the district court to decide.

Accordingly, Judge Woods's April 16, 2024 order is "the final adjudication of the

§ 1782 application" in this case, and we have jurisdiction to address Banoka's

arguments on the merits. *Chevron Corp.*, 629 F.3d at 306.

## II. The district court did not abuse its discretion when it denied Banoka's § 1782 petition.

A district court analyzes a § 1782 petition in two steps. *Fed. Republic of*

*Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022).

> First, the court must determine whether the application
> satisfies § 1782's three statutory requirements: that (1)
> the person from whom discovery is sought resides (or is
> found) in the district of the district court to which the
> application is made, (2) the discovery is for use in a
> foreign proceeding before a foreign [or international]
> tribunal, and (3) the application is made by a foreign or
> international tribunal or any interested person.

*Id.* (citation omitted). Because the interpretation of those statutory requirements

raises purely legal issues, we review the district court's analysis at this step *de*

*novo. Id.* at 147.

Second, where those statutory requirements are met, "[t]he permissive

language of § 1782 vests district courts with discretion to grant, limit, or deny

discovery." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 242

(2d Cir. 2018), quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997). "We

review the [d]istrict [c]ourt's application of the . . . *Intel* factors and its decision to

order discovery for abuse of discretion." *Fed. Republic of Nigeria,* 27 F.4th at 147

(internal quotation marks omitted).

The district court's discretion under § 1782 is guided by the statute's "twin

aims of providing efficient assistance to participants in international litigation

and encouraging foreign countries by example to provide similar assistance to

our courts." *Intel Corp.,* 542 U.S. at 252 (internal quotation marks omitted). The

Supreme Court has identified four specific factors relevant to those aims,

commonly referred to as the *Intel* factors. *See Mees v. Buiter*, 793 F.3d 291, 298 (2d

Cir. 2015), citing *Intel Corp.,* 542 U.S. at 264. Those factors are:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent";
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
> (4) whether the request is "unduly intrusive or burdensome."

*Id.*, quoting *Intel Corp.,* 542 U.S. at 264-65.

20

The *Intel* factors are "non-exclusive," and we have cautioned that they "are not to be applied mechanically." *Kiobel*, 895 F.3d at 244-45; *see also In re Application of Venequip, S.A. v. Caterpillar Inc.*, 83 F.4th 1048, 1058 (7th Cir. 2023) (*Intel*'s "nonexclusive list of potentially relevant factors gives the district court great flexibility and discretion") (internal quotation marks omitted). District courts are instructed to "take into account any other pertinent issues arising from the facts of the particular dispute" in addition to the *Intel* factors. *Kiobel,* 895 F.3d at 245. Nevertheless, district courts are "'not free to read extra-statutory barriers to discovery into [S]ection 1782' under the guise of exercising their discretion." *Fed. Republic of Nigeria*, 27 F.4th at 148, quoting *Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993).

In other words, while a district court may freely consider and weigh factors that it finds relevant – even those which do not fall neatly within one of the four *Intel* factors – it abuses its discretion when it imposes strict requirements related to those factors that go beyond the limitations found directly within the statute. *See id.* at 151. For example, we have not "authorize[d] denial of discovery pursuant to § 1782 *solely* because such discovery is unavailable in the foreign court," – but we *have* approved "consideration of foreign discoverability (along

21

with many other factors) when it might otherwise be relevant to the § 1782 application." *Mees*, 793 F.3d at 303 (emphasis added) (internal quotation marks omitted). Similarly, we have held that a district court abused its discretion when it denied a § 1782 request solely because the petitioner had not pursued an alternative foreign discovery mechanism first. *Fed. Republic of Nigeria*, 27 F.4th at 151.

> **A.** **The district court did not abuse its discretion by considering the forum-selection clause as a factor weighing against granting discovery.**

Banoka argues that "[t]he district court wrongly relied on the existence of an English forum selection clause between Banoka and Westmont to 'tilt' the third *Intel* factor against" granting its § 1782 request because, it maintains, "[t]he lack of any evidence of a [U.K.] restriction or policy against proof-gathering should have ended the district court's third *Intel* factor analysis in Banoka's favor." Appellants' Br. 6, quoting Special App'x 54. Accordingly, it contends that the district court "[i]mpermissibly [i]mposed" an "[e]xtra-[s]tatutory [b]arrier[]" to its § 1782 petition by weighing the forum-selection clause against discovery. *Id.* at 38.

As an initial matter, several courts within this Circuit have held the opposite, determining that forum-selection clauses *can* be relevant and weigh against granting § 1782 discovery under the third factor. *See In re Alghanim*, No. 21 Misc. 167, 2022 WL 1423088, at *4 (S.D.N.Y. May 5, 2022) (collecting cases). In *Alghanim*, for example, the district court held that the petitioner's forum-selection clause, combined with the "very limited scope of discovery permitted under [the selected forum's] law and procedure," raised "heightened" concerns about "improper attempt[s] at forum-shopping." *Id.* Accordingly, it held that "the analysis under the third *Intel* factor suggests that granting the Petition would not further the aims of [S]ection 1782." *Id.* And in *In re Saul Klein*, the district court held that the third factor weighed against granting discovery where, given the relevant forum-selection clause, granting the petition "would arguably allow [the petitioner] to sidestep the exclusive forum that he agreed would arbitrate disputes among [the parties]." No. 23 Misc. 211, 2023 WL 8827847, at *12 (S.D.N.Y. Dec. 21, 2023).

Before today, we had yet to address this issue in a precedential opinion – though we recently upheld the district court's ruling in *Klein* in a summary order, observing that the district court "acted well within its discretion" when it

"reasoned that . . . the petitioner's decision to enter into a forum-selection clause is a factor that can weigh against the granting of an application brought under [S]ection 1782." *Klein v. Altara RK Invs. Ltd.*, No. 24 Civ. 228, 2025 WL 560105, at *3 (2d Cir. Feb. 20, 2025) (internal quotation marks omitted). Today, we reaffirm that observation: a district court does not abuse its discretion by considering a forum-selection clause as one factor weighing against discovery under § 1782.[8]

Contrary to Banoka's arguments, that holding abides even where the party opposing discovery identifies no specific "proof-gathering restrictions" in the contractually chosen forum that would render the clause specifically relevant to the third *Intel* factor.[9] The *Intel* factors are, after all, "non-exclusive." *Kiobel*, 895

---

[8] "Although we decided [*Klein*] by nonprecedential summary order, rather than by opinion, our '[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (quoting 2d Cir. Order of June 26, 2007, adopting 2d Cir. Local R. 32.1). We see no reason to depart from the proposition on which we relied in *Klein* and which "we now adopt by opinion." *United States v. Strange*, 65 F.4th 86, 90 n.1 (2d Cir. 2023).

[9] We need not decide whether Banoka is correct that the existence of a forum-selection clause does not inherently suggest the existence of – or, more importantly, improper attempts to evade – foreign "proof-gathering restrictions" under the third *Intel* factor. On the one hand, we have stressed that for purposes of that factor, the definition of "proof-gathering restrictions" is relatively limited: "'[p]roof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original). That reasoning might suggest that a

24

F.3d at 244. In evaluating whether granting a petition would uphold the "twin

aims" of § 1782, *id.* (internal quotation marks omitted), a district court is not

prohibited from considering, where applicable, a party's clear, *ex ante* contractual

preference for a different forum with its own, unique discovery practices – just as

it is not prohibited from considering, among other factors, the discoverability of

the relevant documents within that other forum, *see Mees*, 793 F.3d at 303. The

fact that a district court's forum-selection clause analysis may not fit seamlessly

under the third *Intel* factor does not render that analysis irrelevant or make the

district court's consideration of that factor an abuse of discretion, as Banoka

claims.

In so holding, we find ourselves in good company. The Seventh Circuit has

similarly upheld a district court's decision denying a § 1782 petition in large part

based on the parties' forum-selection clause. *Venequip*, 83 F.4th at 1057. There, the

district court had "thought it important that the parties—sophisticated

___

forum-selection clause, without more, may not inherently implicate the third *Intel*
factor. On the other hand, other courts have expressly held that the district court's
consideration of a forum selection clause under the third *Intel* factor "reflects a faithful
application of the *Intel* factors and a reasonable exercise of the judge's wide discretion
under § 1782(a)." *Venequip*, 83 F.4th at 1057. Regardless, as explained below, whether
the existence of a forum-selection clause goes to the third *Intel* factor is beside the point.
Such a clause remains a factor that the district court may consider in its exercise of
discretion.

international companies—had agreed to resolve their disputes in Swiss courts under Swiss law, with its more circumscribed discovery procedures." *Id.* The Seventh Circuit approved that analysis, noting that "a forum-selection clause might indicate the parties' preference for a court system that doesn't contemplate the level of compulsory process available in America," making it "a relevant and potentially important factor in the § 1782(a) calculus." *Id.* (internal quotation marks omitted). The district court there had examined several "permissible contextual factors" – including "the differences between Swiss and American procedural law, the sophistication of the parties," and existing in-circuit case-law addressing the potential relevance of forum-selection clauses – before concluding that the clause weighed against granting discovery. *Id.* And even then, the Seventh Circuit stressed that the district court "[had] not give[n] *dispositive* weight to the forum-selection clause or 'resurrect[ed]' the 'foreign discoverability' rule," as the petitioner-appellant had claimed. *Id.* at 1057 (emphasis in original). That fact-sensitive and "highly contextual" analysis, the Seventh Circuit held, "was not error." *Id.* at 1057-58.[10]

---

[10] The Fifth Circuit's summary affirmance of the district court's denial of Banoka's § 1782 petition as to Westmont, which similarly gave weight to the forum-selection clause as part of a careful contextual analysis of the factors bearing on its discretionary

The same is true of the district court's analysis in this case. Like the district court in *Venequip*, Judge Woods carefully evaluated whether the clause was relevant to Banoka's specific § 1782 discovery requests before he concluded that it weighed against granting Banoka's petition. First, he determined that Banoka and Westmont were both "sophisticated parties who bound themselves to litigate this matter in English courts . . . subject to U.K. proof-gathering limitations."[11] Special App'x 55-56. Then, he determined that that choice was in fact relevant to the petition because Banoka's "Section 1782 petition [wa]s openly an attempt to obtain communications from Westmont that demonstrate[d] its state of mind" after it was "deterred from subpoenaing Westmont directly."[12] *Id.* at 56. Although

decision, suggests that it too approves of that approach. *See Bissonnet,* 2022 WL 636680, at *1.

[11] We have explained that "a forum selection clause involving sophisticated parties to an international transaction is an obligation that is calculated by parties into the cost of a contract." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (internal quotation marks omitted); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (noting that a forum selection clause may have been "a critical factor in [the parties'] agreement to do business together in the first place").

[12] Banoka claims that the forum selection clause is irrelevant to this § 1782 petition because the clause was part of an agreement between Banoka and Westmont rather than between Banoka and the Elliott entities. But Banoka's declarant admitted to the district court that Banoka's petition was "properly to be regarded as *'arising out of or in relation to'* the Exclusivity Agreement." App'x 22 ¶ 21 (emphasis in original). Moreover, a forum selection clause will be relevant to a § 1782 petition against a non-party to the agreement containing the clause when the "real party in interest" was bound by the

27

he found that "the parties ha[d] not identified any English 'prohibitions' on the use or acquisition of the requested materials," he observed that based on the affidavit, rules, and case-law identified by the Appellees, it was "unlikely" that an English court would allow pre-suit discovery of the requested materials. *Id.* at 56-57.[13] Finally, he relied on a host of in-circuit cases to conclude that a forum-

clause. *In re Alghanim*, 2022 WL 1423088, at *4. Banoka's § 1782 application as to the Elliott entities was "openly an attempt to obtain communications from Westmont," Special App'x 56, which makes the forum selection clause relevant here.

[13] Banoka argues that this conclusion impermissibly relied on the opinion of Appellees' English lawyer, which it claims was based solely on "his disagreement with the merits of Banoka's underlying English law claims." Appellants' Reply Br. 10, citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Not so. The record reflects that Appellees' lawyer quoted *Banoka's own declarant's* statement conceding that he "d[id] not consider that [Banoka] would be able to plead a case of fraud against Westmont consistently with [the applicable] standards" absent additional discovery and "the Barrister that [his] firm ha[d] engaged agree[d]." App'x 451-52, quoting App'x 26 ¶ 38. The same declaration conceded that "[a]s matters stand, [Banoka] ha[s] insufficient material from which to plead fraud in accordance with English pleading standards." *Id.* at 18 ¶ 4. Appellees additionally submitted a copy of the relevant English procedural rules, which require pre-suit discovery applications to be "supported by evidence" and both the respondent and the applicant to be "likely to be a party to subsequent proceedings." *Id.* at 508. And they submitted a judicial opinion interpreting those rules to require "a real prospect, if not a certainty or likelihood, that there will be proceedings between the parties" before pre-suit discovery will be granted. *Id.* at 515. Furthermore, Banoka submitted a statement to the district court in Texas in its earlier § 1782 proceeding in which it "express[ed] concern that [its] pre-action disclosure application, if filed [in an English court], would fail." *Banoka*, 2022 WL 480118, at *2. We reject a district court's factual findings related to a § 1782 petition only when they are "clearly erroneous." *See Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024). Based on that apparent admission in the district court in Texas, Banoka's expert declarant's concessions, and the rules and judicial opinion provided by Appellees, the district court's finding that pre-suit discovery in an English court was "unlikely," Special App'x

28

selection clause *can* be a relevant factor in analyzing a § 1782 petition – including the district court decision in *Klein* that we later affirmed. *Id.* at 54-56, citing *In re Saul Klein*, 2023 WL 8827847, at *12, *aff'd Klein*, 2025 WL 560105. Only after reaching those conclusions did Judge Woods ultimately decide that "the fact that petitioner agreed to pursue litigation related to the transaction in the U.K., subject to U.K. proof-gathering limitations, weigh[ed] against granting the petition."*Id.* at 56.  And even then, he explicitly did not treat that conclusion as "dispositive" to his § 1782 analysis; instead, he considered it among other relevant factors. *Id.*

Thus, like the Seventh Circuit, we hold that the district court's fact-sensitive and "highly contextual" analysis regarding the forum-selection clause was not an abuse of its discretion. *Venequip*, 83 F.4th at 1057-58.

**B.      The district court did not abuse its discretion in concluding that Banoka's discovery requests were unduly burdensome.**

Nor did the district court abuse its discretion with regard to the fourth *Intel* factor. That factor is assessed under "the familiar standards of Rule 26 of the

---

57, is sufficiently supported by the record. In any event, the district court explained that it "[did] not afford the foreign discoverability of the requested materials undue weight." *Id.* (internal quotation marks omitted). This is consistent with our case-law allowing district courts to consider the foreign discoverability of the requested materials "along with many other factors." *Mees*, 793 F.3d at 303 (internal quotation marks omitted).

Federal Rules of Civil Procedure," *Mees*, 795 F.3d at 302, which provides that a "court *must* limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 60 (2d Cir. 2024) (emphasis in original), quoting Fed. R. Civ. P. 26(b)(2)(C)(i). For example, "[i]f it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative [under Rule 26]." *Id.*, quoting *Metallgesellschaft*, 121 F.3d at 79. We have also instructed that "a court may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery" – though the fact that documents may be located abroad is not *per se* overly burdensome or a bar to discovery. *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019). "[T]he ultimate question of burdensomeness is within the district court's discretion to decide." *Fed. Republic of Nigeria*, 27 F.4th at 159.

Banoka argues that the "[m]inimal document discovery from a finite period of time and limited depositions" it requested were "not disproportional

with the needs of the case," which "concerns a € 55 million transaction." Appellants' Br. 54. It contends that the shared leadership of – and IT platforms used by – EIM, EMC, and Elliott U.K. demonstrate that any distinction between the entities was artificial, meaning that it should have been allowed to seek all Elliott documents relevant to the planned hotel transaction through the U.S.-based entities. To support its claim that "Elliott maintained a fully integrated business operation," it points for the first time on appeal to an email from an Elliott representative stating that all investment decisions were required to "go through a special committee" – though it cites no record evidence identifying the members or function of that committee. *Id.* at 58, quoting App'x 110. Finally, it urges that the district court's stated concerns about extraterritorial discovery should not have prevented it from receiving the discovery it requested.

None of those arguments demonstrates that the district court abused its discretion here. First, the district court found that (1) Banoka's document requests were "unduly broad, comprising 14 expansive categories, most of which seek all documents and communications related to various issues without limitation," and (2) its deposition requests would be unduly burdensome in light of the fact that the Appellees' employees – as opposed to the employees of their U.K.-based

31

counterpart, Elliott U.K. – "were not directly involved in the failed transaction." Special App'x 58 (internal quotation marks omitted). Despite Banoka's protestations, there is no doubt that its requests were expansive: they encompassed virtually any documents possessed by the Appellees that might be related to the sale of the hotel. *See, e.g.*, App'x 198-99 (requesting "[a]ll documents and communications . . . [with] Westmont concerning [Banoka]" as well as all available documents and communication about "pricing calculations," the exclusivity period, due diligence for the planned transaction, the effects of the COVID-19 pandemic on the planned transaction, and more). We see no reason to disturb the district court's finding about the scope of Banoka's demands.

Second, the evidence to which Banoka points does not demonstrate clear error in Judge Woods's determinations that Elliott U.K. was operationally distinct from EMC and EIM and that it – not the U.S.-based entities – was involved in negotiating the planned transaction. There is record evidence to support those conclusions: the Elliott entities submitted a declaration from the Global Head of Real Estate at Elliott U.K. stating under penalty of perjury that "Elliott UK communicated with Westmont regularly throughout the five-month period during which Westmont and CVH were engaged in negotiations," while the U.S.-

based EMC and EIM "had no involvement in the negotiations surrounding the contemplated transaction." *Id.* at 832. In contrast, Banoka conceded to Magistrate Judge Parker that it "d[id not] know . . . who Westmont communicated with" among the Elliott entities. *Id.* at 982. And Banoka's "special committee" theory (1) relies entirely on Banoka's own speculation regarding the composition and function of the "special committee," and (2) was not raised below and has therefore been forfeited. *See United States v. Stillwell*, 986 F.3d 196, 200 (2d Cir. 2021); *see also Jacubovich v. State of Israel*, 816 F. App'x 505, 510 (2d Cir. 2020) (summary order) (§ 1782 case).[14]

Finally, though Banoka stresses that the Elliott Funds had the practical ability to access the Elliott U.K. documents it seeks through shared servers, the district court acted within its discretion when it considered the foreign location of the documents and the foreign status of their "primary custodian" under the fourth *Intel* factor. Special App'x 63-64. The district court reasoned that to do otherwise would "effectively collapse[] corporate separations and incentivize[] companies to maintain segregated computer systems." *Id.* at 64. That

---

[14] Banoka does not revert to this argument in its reply brief and thus raises no objection to the Elliott entities' observation that it "never mentioned the 'special committee' in the district court proceedings." Appellees' Br. 46.

33

consideration was appropriate. Indeed, we have reversed a district court for failing to consider precisely such concerns. *See Kiobel*, 895 F.3d at 247. In *Kiobel*, we held that the district court had abused its discretion in granting § 1782 discovery even though granting that discovery could force "U.S. law firms with foreign clients . . . to store documents and servers abroad" in order to "to avoid potential disclosure issues under Section 1782 . . . which would result in excessive costs." *Id.*; *see also In re del Valle Ruiz*, 939 F.3d at 533 ("[A] court may properly, *and in fact should*, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery.") (emphasis added). Having stressed such concerns ourselves, we cannot fault the district court for doing the same.

Accordingly, we see no abuse of discretion in the district court's assessment that the fourth *Intel* factor largely weighed against granting Banoka's § 1782 petition.

*****

Because the district court carefully weighed each of the relevant factors "[c]ollectively," treating none of them as "dispositive," Special App'x 56-57, 62,

34

we detect no abuse of discretion in its assessment of those factors as a whole.

And because we approve the district court's reasoning, we need not reach the

Elliott Funds' argument that Banoka's English lawsuit was not within

"reasonable contemplation" as required to meet § 1782's "for use" requirement.

## CONCLUSION

Accordingly, we AFFIRM the order of the district court.